23-4066 Good morning. I may please the court. Yevgeny Parkman for the felon, Kenneth Sparks. I'd like to reserve three minutes for rebuttal, and I'll keep an eye on the clock, Your Honor. Sure. Go right ahead. I'll dive right into the Fourth Amendment issue, which is Kay's dispositive. And it boils down to, a woman's clothing is not a reason to suspect that she's a prostitute. Here, Officer Flannery stopped Mr. Sparks and his passenger for expired registration and questioned them about prostitution. It was around 9 a.m. on a Tuesday at the Twin Peaks Viewpoint on top of one of San Francisco's Seven Hills, a touristy place, not a time or a place associated with prostitution. But apparently a place where the police had had a number of car break-ins. They were worried about that? Correct, Your Honor. This is a tough one, I have to say. I mean, they come upon them. They have a probable cause to stop the car, and then they roll down the window due to officer safety reasons. That seems undisputed. And there's all kinds of indicia of prostitution with somebody who's dressed as a prostitute. So why wouldn't that arouse reasonable suspicion? Well, I think that we have to look at the case law. And the case law, when the crime that's being suspected is prostitution, generally requires at least one of three very broad factors to support suspicion of prostitution. And those factors are behavior that indicates solicitation or a history of prostitution that's known to the officers. I remember you talked about this in your brief, so I think we're probably all familiar with that. The only thing that stood out to me when I read that in your brief is it seems like what you're really doing is summarizing what most of the cases have. But the reason they have that is because I'm guessing most of the cases involve somebody, officers being in an area where prostitution normally happens. And so they're dealing with the same players, all that. So all those factors that you talked about being typical in a case, it makes sense that those would be typical. This is a little different because they're not there looking to bust prostitutes. They're there for a different reason, but they see the indicia. And I think one of your arguments was, yeah, but there was a whole bunch of other stuff in the backseat too. And I, there was other stuff. But does the case, it seems to me that if you see indicia of what you think is criminal activity and you see a bunch of other stuff, the other stuff doesn't really outweigh. It's not like if you see a bag of cocaine and you see a bunch of suitcases or something that look like you're, you don't be like, well, it looks like somebody's trapped. The cocaine is enough. So why is that not enough here that they saw some indicia that looked like, was it regal stuff? Why isn't the stuff in the backseat enough? He approaches them for a reason, and I don't think you're challenging that. Correct, Your Honor. To follow up on Judge Van Dyke's question. Well, actually, first Judge Bess is. The next step is he asks them to roll down the window for officer safety. I don't think you're challenging that. Not under reclaimation. Okay, so then you get to Judge Van Dyke's point, which is what's seen in the backseat. Why isn't that enough, as Judge Van Dyke asked? Correct. To suspect prostitution. And specifically, I'm not sure why it helps. Sure, there's other stuff there, but I think your argument, as I understood it, was mostly, yeah, but there's a whole bunch of other stuff. But I don't think that's normally how we think of when you see indicia of criminal activity. You don't think, oh, but there's a whole bunch of other stuff, so that indicia should have been overlooked. I appreciate the Court's point. And I think it's that indicia is tied to times and places where prostitution frequently occurs. And when you take things like clothing and money, which are the two items that Officer Flannery is referring to as indicia, and you're taking them out of, for example, the mission, the epicenter of prostitution in San Francisco, and you're taking them to the Twin Peaks viewpoint where there's no testimony that prostitution has ever occurred there, that Officer Flannery or anyone else has observed prostitution, and you're saying that those things become indicia. Right. But, I mean, there was testimony from the officers that the things that they observed in the back seat were things that are associated with prostitution, not exclusively, but that's one thing they're associated with, and that they observed the demeanor of the passenger looking straight ahead, which was, you know, these are officers that have some training in sex trafficking, and that created a reasonable suspicion, which is the only thing we're asking here. But I think it's important that it's only Officer Flannery, and his experience is tied to the mission where prostitution frequently occurs. Well, it's not that far away. I mean, it's just up the hill. Sure. But I think he has to give an explanation. I think if we have a person wearing something and with clothes on, in particular clothes with cash, at night on a block where prostitution frequently occurs, then I think there's reasonable suspicion under the case law. Well, there is, but what we're grappling is the opposite. Why isn't there here? Why wasn't this in the case? I guess one way of looking at it is two things I'd like to say. One is when you remove behavior, when you remove location, when you remove history, then the officer is just asking the question, is this the type of woman that looks like a prostitute? Well, he's not. He's not. He's got stuff in the back seat. It's not just any old stuff. It's pretty unique, right? Clear heels, a blue wig, cash is strewn about. And he sees a passenger who looks very young, who is, according to our record, sort of staring straight ahead, very scantily clad in a red lace dress, very, very short, I think short enough that her underwear was showing. And it was chilly. So that looks odd, and he's got to be concerned about, why wouldn't he be concerned about a young, you know, youth trafficking? I think in this situation, in this location, just a number of innocent explanations far outnumber the possible criminal explanation. They could have been doing an Instagram photo shoot. They could have been out all night. They could have been ‑‑ she could have been a stripper. They could have been ‑‑ that's just the way she could have liked to dress. I think that's right. So they take the next step, again, because they're very concerned about a child. And then things ‑‑ it just kept continuing. It seemed to me there was more and more and more, asking for the identification. The identification didn't check out. And you know the record, of course, very, very well. I think it's that first ‑‑ so the initial prolongation happened about two minutes in. At that point, the passenger was on her phone for the beginning of the stop. And I think being on your phone is not really avoiding the officer or ‑‑ I'm not sure that's a fair inference to say that she was acting odd or very nervously when she's on her phone. So is that the place you want us to pinpoint, that two minutes was not reasonable, that first two minutes? Right. So the officer asks the passenger for her name and asks for identification and then asks the driver how they know each other. So that is prolonging the stop without reasonable suspicion of prostitution. But you think it's over right there. You think it's over. Absolutely. I think at that point the officer needs reasonable suspicion. And I think there's also a lot of unclarity in the record, because this record kind of went very quickly over this, about what the officer observed when. And I think at the very least we need a remand to see if he saw the blue wig before the prolongation. I think I interrupted Judge Brest who was trying to ask a question. I was going to ask, you know, there were condoms in the vehicle also, but it seems that they were noticed later. So if they had been noticed earlier, initially would this be different? Certainly different. I think it would be a much closer question. I would have a much tougher argument that it's not reasonable suspicion. But I do think at least. So what's the difference? We have condoms are associated with sexual activity, but we have lots of other things in the car that they interpreted, it turns out, absolutely correctly as indicia of commercial sex activity, including the cash that's strewn all over the car. Most people don't have that in their car, just wads of cash all over the place. I don't think that's supported by the record. I think if it's true that in his talking about what's going on, Officer Klainer is saying there's wigs all over the car, there's cash all over the car. But as if we look at the pictures, it seems like the cash is just in the passenger side panel. And all that the. . . I thought your argument was that you couldn't see the condoms from the driver's side in the passenger side panel. But I thought from the pictures that the cash was fairly evident. Yes, that's correct. I'm just saying that it's not strewn all over.  I mean, if you knock out the bike car, you wouldn't see cash just, like, laying around in the car. Well, but there's not testimony. I think if the testimony is, I observed so much cash and in particular denominations in a particular location that suggested to me, based on my experience and training, that it is the product of prostitution, especially when seen with whatever else. That would be one thing. But the declaration is, I observed cash, not cash here, there, how much cash. It's just not clear from the record how much cash there is, where it is. And if we look at the actual evidence that's in the record now, we see that the cash is not all over the car. It's in a particular spot. So we're down to five minutes. There's also a big thing in this case. I mean, I don't want to cut off the probable cause reasonable suspicion. But the other big thing is your argument about the interpretation of the statute, and particularly, I think, the causation issues. Did you want to talk about that?  I thought that was kind of an interesting and challenging issue. Yes, Your Honor, and particularly focusing on the causation. The statute requires the government to prove at States that the defendant must have knowledge or reckless disregard that the person will be caused to engage in a commercial sex act. Not that the person will engage, as the district court instructed the jury, but will be caused to engage. And I think the be caused part has particular meaning. And the place to look for what it means is a different part of the Traffic and Victims Protection Act, the initial bill that introduced. Yes, and it seemed to me your argument, just to cut to the nub of, it seemed to me, because of your time, will be caused, you wanted to point out that somebody else has to involve, somebody else causing it. Somebody other than the two actors, the trafficker and a third person. But when you're dealing with a minor, when you're dealing with, why is it inappropriate to say, if you're sending a minor in to engage in prostitution, and you know or are acting in reckless disregard of the fact that you're sending in a minor to engage in prostitution, then you know that they will be caused. Because for minors, we don't think of them as being able to give consent, right? So there's a difference between minors. And so you will be, the minor will be caused to engage in prostitution, even if there's no third party pimp or if there's no, just the very fact that they will engage in prostitution means they will be caused, even if it's just the other person they're engaging in prostitution with. You see what I'm saying? They will be caused by it. I think it's ultimately a jury question, but I think there's two problems with kind of reading this not consent part as defining what will be caused to mean, as sort of reading that language as a politically correct way of saying that a minor is never induced to engage in prostitution. And I think the first Well, no, to be clear, I think that language applies both for minors and adults, right? It would, that same language is in the statute if you had an adult who was being, who was violating it for an adult who, because they were being coerced or against their will. Is that correct? Well, no. The first part of the statute is if you're caused to engage by forced fraud or coercion or if you're under 18 and caused to engage. But looking at the 7102, it actually says induced to engage by forced fraud or coercion or under 18 and induced to engage. How much does this really matter? I mean, isn't there overwhelming evidence that the defendant caused her to engage in prostitution, fully facilitated this by taking her all over the blades and by assisting and picking her up in Merced? And I mean, we can have the legal argument about what causation means, and I tend to think Judge Chabria did a nice job in trying to make sense of all this. But at the same time, like, isn't there overwhelming indication that he was the cause of her engaging in commercial sex activity as a minor? No, Your Honor. The defense was that they were both independent sex workers, and while they pooled their resources and he gave her some advice, neither was causing the other. And actually, the government said it will not rely on coercion or even soft coercion theory of Mr. Sparks. But how about harboring, transporting all the other actus reus that he knowingly engaged in? So I think that's the first part of the statute, and I think he did transport her for the purpose of prostitution. But the second part, the cause to engage, I'm saying, means that either he or someone else has to induce her to engage in the planned prostitution. And I want to return to the ---- Well, I'm not sure. I mean, where are you getting that from the statute? Because there's a clause here that says forced threats of forced fraud coercion, but that doesn't apply for minors. Correct. So that part says caused by those things. And the second part says just cause to engage. And what I want to point the Court to is what's now been codified as 22 U.S.C. 7102, subsection 11, which defines severe forms of trafficking, and that ---- which comes from the same act. And it says that severe forms of trafficking is where a person is induced to engage in prostitution through forced fraud or coercion or is under 18 and is induced to engage in prostitution. And other courts, including Judge Smith on this Court, have drawn the connection between that part of the TVPA and 1591, saying that what 1591 really prohibits is severe forms of trafficking, which shows that Congress used induced and cause as synonyms. And it's especially apparent if you look at the first part, that if you swap induce for cause in the forced fraud or coercion part, they would mean the same thing. So in the second part, induce cause must also mean induce. I want to return to one thing that Judge Van Dyke asked about this statute of minors not being able to consent. Minors not being able to consent. And I think that's a non sequitur for two reasons. One is this statute applies to persons who are under 18. In most States, the age of consent is either 16 or 17, not 18. So it applies even to people who can consent to sexual intercourse. And second, this statute deals with prostitution, which in 40 and higher out of the 50 States is illegal anyway. So no one can consent to prostitution. So I think that this minors not being able to consent is not a useful way to determine what cause to engage actually means. I see that time. You are out of time. I'll put a little time on the clock when you come back. Thank you. Good morning, Your Honors. Kelly Bolton. I don't know if my colleagues want to start with the reasonable suspicion. You got good morning. You got good morning.  No, good morning. Judge Press is so nice. But my hardest question for you guys, what about the mom who's taking their child to school knowing that they're very much opposed to it, but knowing that their child has this bad habit of being a prostitute after school hours? So the mother is transporting their child to school knowing that that might happen, not wanting it to happen. Or what about the halfway house that is feeding a child and therefore providing for them not wanting them? So you understand. It seemed to me under the government's very, very, under your causation argument as in your briefs, that those people would be roped in and be liable under the statute. What is your answer to that? Thank you, Your Honor. I want to answer Your Honor's hypotheticals directly, but I want to start by pointing to this is a challenge to the jury instructions that were given in this case. And Judge Chabria in this case actually gave stronger language or arguably stronger language on the cause.  No, I know. He gave so. But your argument seemed more extreme than that. It wasn't. You're right. Judge Chabria didn't accept that. But why is your argument defensible, I guess, in that sense? Well, Your Honor, again, the government's argument is only that the jury instructions were not error here. But to go directly to Your Honor's hypotheticals, it is based on the government's reading of the plain language of the statute, but also on this Court's prior decisions. And specifically in order, and Judge Christen in particular is familiar with several of these, the Bachman case, the Hornbuckle case, and the Hines case. And I'll walk through each of those in just a moment. But again, to answer Your Honor's question directly, this Court has analyzed the will of the government to protect children from sexual abuse through the use of legal language in a few different instances. And one of the things that has been repeatedly said by this Court and many other circuits are the exact points that Your Honor made to my colleague across the aisle, which is that Congress has clearly expressed intent to protect children from sex trafficking. They have over the years broadened the ability for the government to try to go after the entire — Halfway House would be liable under this statute, under the hypothetical I've given? Your Honor, it does depend on the facts of the circumstances, right? And so I want to both meet your hypothetical but say that even in the hypothetical we don't know all of the facts. Well, in his hypothetical, because I think that's the one you need to answer, please. In his hypothetical, the mom is regretful of this, transports a child, doesn't wish for this to happen, but knows it's going to. Your Honor, it would depend on whether or not the mother, knowing or reckless disregard, that her daughter will be caused to engage in sex trafficking. Well, so there's something — the statute is weirdly written because it says will be caused to, and we have to — something is causing that. So what is the something? And it seems like it has to be what's the actus reus that's in A1 that you have to knowingly undertake. So one would think that a mother who transports someone to the blade may result in — may cause — maybe perhaps on those facts that person will be caused to engage in illegal sex activity, but someone who takes somebody to school, knowing that later they may take an Uber to the blade, maybe will not. And that — we have to read something into will be caused. We've got to give some meaning to that. It's hard to see how it would be totally detached from the actus reus, if that's the government's argument. That seems unpersuasive, but I'm not sure that it is. Well, again, Your Honor, the government's argument is simply that the jury instructions did adequately capture the statute, and Judge Chabria required as a result of. So he did require a tie. But do you think that was — I mean, you thought that was overkill? Your Honor, it's just simply that that is more protective under the government's reading than what — Well, the reason I'm asking this is not — is because your argument is that Judge Chabria's instruction was incorrect, right? It was too protective. But if you don't go with his instruction, if you go with your position, then, you know, let's take the — if there's too much distance with the mom taking the child to school, there's the halfway house. That, like, literally the reason they exist is to try to help these youth who are engaged in prostitution, that they do not want them to be involved in prostitution, but they know that's not what we're going to do. So they feed them and they give them a place to sleep. And it seems — and they know that they are facilitating prostitution — or the argument could definitely be made that they are facilitating prostitution. So how could they not — I mean, you know, it's assumed for the sake of the hypothetical that they — it's 100 percent clear, everybody agrees, they are not — they do not want these kids engaging in prostitution. But it seems to me under your argument, they would be — they would — that would — they would be pulled in. So why is Judge Chabria's answer to that not the correct answer? I mean, that's not just — that helps us in deciding this case. If that's the correct answer, then that's what the instruction should be going forward so that in a future case, we don't end up with somebody — you know, somebody's arguments and the facts aren't — and the instructions aren't so helpful to the government. Well, Your Honor, I want to start by saying I respectfully disagree. The government does not think that Judge Chabria got the instruction wrong. The government — You think his instruction was too — you know, made the — added too much causation — required too much causation? Well, Your Honor, the best I can do is the hypotheticals Your Honor provides, and of course, my colleagues across the aisle, are unsupported in any case law or prosecution that has been brought to — But is that your argument? I mean, you might — maybe you wanted to — yeah, that would be covering a law, but no prosecutor would ever bring that case. Is that — Your Honor, I think that — I think that there is nothing that the defense has pointed to to show otherwise, and I would point the Court, if I may, to the 11th — It's a little frightening, though, to have like a statute that — that pulls in — I mean, it does seem — I can't — nobody would think that that's what Congress wanted to — you know, that that's what they meant to criminalize, and so it seems to point out that maybe there's a problem with the interpretation statute. That's why I'm — that's why I'm fixated on this. Your Honor, if I may, I would respectfully disagree that there's no indication that Congress would intend this. I believe that Congress intended to give a broad tool to combat the entire apparatus of sex trafficking — Congress did not mean to criminalize parents who have a child — have a wayward child where the parent is still doing something to support and help that child, knowing they're doing that thing but wishing they weren't. And I'm sure they didn't mean to do halfway houses — criminalize halfway houses either. Is that your position? These are Congress' — But, Your Honor — Your Honor, if I may, to point to the Hornbuckle case that was before this Court, sometimes the most nefarious types of these cases do involve a parent, and it may not be the loving parent that the hypothetical that Your Honor posed, but it may be the parent that is forcing the child into sex trafficking and taking some of the — Right. So — so — exactly. So if the child — if there's a parent that is doing it, what is the distinction between those? There's a difference in — in — in inducing the — that's what — that's what their position is. So that — their answer is that that — that would draw the distinction between those. And you're saying you don't need that, but — but — but how do you not rope in the person who's just trying to be helpful but not trying to actually encourage the prostitution? Well, Your Honor, if I may, I'd like to point to some examples from the case law. So I was starting to say a moment ago the Eleventh Circuit in Gatlin is the only circuit I found that has analyzed this exact question, which is at pins — or 940 — 990, excuse me, F4, 1050, 1060 to 1061. It analyzes this exact question, and it also analyzes what the defendant is arguing here, that mere assistance when a sex worker is otherwise acting independently is not enough to meet that will-be cause for a minor. And the Eleventh Circuit rejects that. And I would argue that that is very much aligned with this Court's opinions in Hornbuckle and Backman and Haynes. And in Hornbuckle, this Court, Judge Christin, analyzed the will-be-caused language and said that that is not broad enough to bring in whether or not the person was independently engaging in sex work on — on her own. It's often a her. And then — I would say Judge Chabria's instruction wasn't error, but what would the perfect instruction have been? Well, Your Honor, I would actually point to the Ninth Circuit model instruction, which was updated after this case and after the jury instruction in this case, and I believe perhaps even influenced by Judge Chabria's comments. And if the Court looks at the Ninth Circuit model jury instruction 20.25, it lists as a separate element that the defendant knew or was in reckless disregard of the person would-be-caused to engage in a commercial sex act. So the distinction is would-be-caused, which more closely tracks the statute, but is somewhat awkwardly phrased, or as a result of, that's the difference? Well, again, Your Honor, Judge Chabria here said as a result of Mr. Sparks' action, Ms. Garcia would be caused to engage. So Judge Chabria added the as a result of Mr. Sparks' action, tying it to that first element. But so if you didn't have that, what is the relationship between the knowingly act and then the will-be-caused? Well, that's where I go back. I point the Court back to the Bachman case, which says there is no but-for causation and there is no proximate cause requirement based on the language of the statute. And the Bachman case doesn't. I mean, he added the as a result in order to try to get out the hypotheticals that I'm — that's how he got. And so he didn't accept the defendant's arguments, but he did add the as a result. And I'm just trying to figure out why the government — what is the problem with the as a result? Why does that create a problem? It solves the loving parent going to jail problem, and it doesn't — and what is the problem? Like, what's the downside of that? Well, again, Your Honor, the government does not have a problem and does not mean to indicate that it has a problem with Judge Chabria's instructions that were given in this case. In fact, we're here to defend them. We're also simply doing a statutory analysis, because that's what the opposing side did, and looking at the plain language of the statute and this Court's prior interpretation of it, including the Bachman case. The Bachman case clearly states that there is no but-for causation in the language of the statute. And so the government is guided by this Court's prior decisions, the plain language of the statute, and here the district court did not err in instructing that as a result of Mr. Sparks' action, Ms. Garcia would be — would engage in commercial sex. And I go back to a point that Judge Bress made to my colleague across the aisle, which is, of course, here there is overwhelming evidence that the standard was met. Whatever the causation standard here, this is not the case that was anywhere close to the line. It's certainly not the hypotheticals that Your Honors are struggling with. And it's not even a constitutional challenge to the breadth of the statute that's before the Court here. So when we come to the facts of this case and we come to the instructions that Judge Chabria gave, the government would argue that this is not the case to find what the contours and the outer limits of the statute are. And here, just to list off some of those, we have Mr. Sparks driving the victim to and from Merced to the Blade when the victim requested to go to Sacramento or to other places to support family members. Those requests were denied. We have Sparks coaching Ms. Garcia on how to prostitute herself, how much to charge, where to go, which Blade to go to, when to switch from the Oakland Blade to the San Francisco Blade. How much to charge on where to go and how to dress, and there's communications about sharing the money or taking the money, or it does seem to be really overwhelming. That's correct, Your Honor. So what about Judge . . . it's actually Judge Van Dyke's. I think I was going to attribute this to Judge Brass, but I think it's Judge Van Dyke's question, which is do we need to get this ironed out going forward, or the government does seem to be advocating a very expansive view. But here today, you're saying you think Judge Chabria got this right. We now have a new model jury instruction that presumably would be used going forward, not necessarily. Is this a case to jump in? What is the difference between the jury instruction, the old and the new? Maybe could you just answer first, is this the case where we should be jumping in on this? No, Your Honor. The government's position is that Judge Chabria adequately covered it here. The Ninth Circuit model instructions cover it going forward. Okay, and then please, the difference between the model and . . . Well, between . . . you say there's new jury instructions that actually came out after Judge Chabria gave the jury instructions in this case, and what is the difference? That's correct, Your Honor. I do apologize I don't have the old version in front of me, but my recollection is that there was no separate element broken out for this causation question that the Court is concerned with. So now the model jury instructions break out the two pieces, and just to back up in the short time I have left to answer Your Honor's questions, the government reads this as there's the knowing and then there's the actus, the action, the list of verbs. Then there is the type, whether the person was a minor or whether they were coerced or fraudulently induced, et cetera, or forced into the prostitution. Then, and the defendant has to know or be in reckless disregard of the type, that they were coerced. That the victim will be caused to engage in. Well, correct, Your Honor, there's two parts to that second piece, and the model jury instructions now break those out as two separate elements. The defendant has to know or be in reckless disregard that the person was a minor, and the defendant has to know or recklessly disregard that the person would be caused to engage in the commercial sex act. That's now a separate element in the new model jury instructions. I do not believe it was. But wait a minute, the existing statute doesn't require that. The existing, so now I am concerned. The existing statute speaks on subpart C about if there's an opportunity to have observed. That's correct, Your Honor, and then that's also listed in the, and I think that's why the model jury instruction lists those as two separate elements. Because then the reasonable opportunity to observe, so long as the government pleads that appropriately in the indictment, then that removes, for just the whether or not the person was a minor, that piece. It removes the mens rea. Thank you. Did that answer your question? I think so. Although, it sounds like the way you're explaining it, they've just taken the statutory language and made it two-part. So it's still sort of, and I think this jury, if I recall, this is a case that I'm recalling, the jury actually had a question about, had questions about some of this. They too were struggling with, they asked, is this the one where they asked the court for clarification or am I thinking of a different case? I don't believe so, Your Honor. The deliberations here are pretty short. I do think they had a question about the coercion count, which they ultimately quitted on, but I could double-check the record if my memory is not serving me well. I can look that up. But it's, yeah, okay. The question? The new instruction is, the number again is 20. 20.25, Your Honor. 25, yeah. Thank you for Your Honor's generous amount of time. If there's no further questions, the government respectfully requests that this court affirm. Thank you. If I may make three points, Your Honor. One, I really encourage the court to look at ER 3842, which are the only factual findings by the district court about what substantiates reasonable suspicion. And I think it shows how unclear the record is about what Officer Flannery observed and when. I think the only fair reading of the record that we know he observed is cash, the dress, and not engaging with the officer for the first two minutes of the stop. And my argument is those things are not sufficient for reasonable suspicion.  Second, I think Judge Collins had, was supporting the district court's interpretation that it has to be the actus reus in Part A1 that causes the prostitution in the latter part of the statute. And I think the biggest impediment to that interpretation is it doesn't work for the adult version of this offense, which also uses the word cause. You can't say that it's those things, the transportation, the harboring, that is then causing the defendant through forced fraud or coercion that's inconsistent with this case law. Rather, it has to be that those things, you did those things while knowing that there's a modus operandi that's going to cause the adult through forced fraud or coercion to engage, but not those things that are causing. And so you can't interpret those two things differently in the first part of the statute and the second part of the statute. And I think especially with the rule of leniency, you then have to interpret both cause and both parts as meaning to induce. So do you think the instruction that you were given, your client was given on this as a result of this is actually more favorable than our current model instruction? I think compared to the model instruction, I don't think so. I think because the model instruction retains would-be cause to engage, it allows the jury to interpret would-be cause to engage as induced. I think that's the language of the statute. And I think that would-be cause is a synonym for induce. So I think that's the problem. I think the problem with changing the instruction is it used to say that you recruit transport for prostitution, so it made explicit that the act that's raised in the first part has to be for prostitution, not recruit to college or transport to the grocery store, but you do those things for prostitution. And I think that makes it extra clear that then the second part of the statute, the would-be cause to engage, has to mean something different. It's not that the person will just be caused to engage in prostitution, because you already proved that in Part 1. And that supports the definition that the second part, the second cause there, involves induce. And the last point I wanted to make is to point the Court to this Court's decision in Hornbuckle, 784F3rd at 556. There, in evaluating whether the undue influence enhancement applies, the Court looked to whether the minor's voluntariness was compromised through things like preying upon the minor or manipulation. And what I'm saying is that that's exactly what the would-be cause to language is getting at. It's the defendant has to know or recklessly disregard that the minor's voluntariness was overcome. Not that he did it, but he knows or recklessly disregarded it. I'm going to stop you there. Yes, Your Honor. Because you're way over time. Thank you both for your arguments. We're going to take a five-minute recess before we come back for the last argument. All rise. This Court stands...
judges: CHRISTEN, BRESS, VANDYKE